## ISAAC CALL *vs.* JAMES E. HAYES.

Essex.    November 3, 1897. — November 24, 1897.

Present: HOLMES, KNOWLTON, MORTON, & BARKER, JJ.

*Malicious Prosecution — Evidence — Want of Probable Cause — Libel — Law and Fact.*

A., who was in B.'s employ, was discharged on Sunday, and told that B. would hold him responsible for every cent that there was on his books, and that he would settle with him on Tuesday afternoon. A. communicated to B. on Monday, through C., the information that he would make a settlement with him on that evening, and during the day collected some money which was due from B.'s customers. On Tuesday morning B. instituted a complaint against A., charging him with embezzlement of the money. *Held,* in an action by A. against B. for malicious prosecution, in which C. testified that he delivered A.'s communication to B. on Monday, that A. was properly allowed to testify that he instructed C. to make such communication.

A. was discharged from B.'s employ on Sunday, B. informing him that he should hold him responsible for every cent that there was on his books, and that he would settle with him on Tuesday afternoon. A. sent word to B. on Monday that he would settle with him on that evening. B. declined this offer, and caused A. to be arrested on Tuesday morning upon the charge of embezzlement, which was founded on A.'s having collected on Monday some money due from B.'s customers; and B. testified, in the hearing on the complaint, that he held A. responsible for all the accounts on his books. *Held,* in an action by A. against B. for malicious prosecution, in which B. admitted that he instituted the prosecution for the purpose of getting back his money and his customers, that there was sufficient evidence of want of probable cause for the prosecution.

An article published in a newspaper, and signed by B., the proprietor of a laundry, stated that "A. has been in our employ as driver. He left Sunday . . . without notice. Early Monday morning he went over our route, collected our work as usual, and turned it over to C.," a competitor. "He also collected money on our account. We had confidence in this man, as he was well recommended. We hope and expect that most of our customers will return, as we do not believe they would be a party to any such 'scoop' if they knew the circumstances. We understand that negotiations for this deal have been in progress

for some time. The public can form their own opinion of a man who will do this, or a firm who will employ him to do it. Pay no money to A. on our account." *Held*, in an action by A. against B. for libel, that the question whether the article was defamatory was rightly submitted to the jury.

TORT, in two counts. The first count alleged that the defendant, on August 13, 1895, falsely and maliciously, and without any reasonable cause, procured the plaintiff to be complained against for the alleged embezzlement of one dollar and sixty cents, the property of the defendant; and that the defendant, without any probable cause, prosecuted the complaint against the plaintiff, who on August 14 was acquitted of the charge in such complaint.

The second count alleged that the defendant caused to be published in a newspaper called the Daily Evening Item, published in Lynn, a false and malicious libel concerning the plaintiff, a copy of which was as follows:

"Notice. Isaac Call has been in our employ as driver. He left Sunday, August 11, without notice. Early Monday morning he went over our route, collected our work as usual, and turned it over to the Excelsior Laundry, Albany Street, Kelley and Batchelder. He also collected money on our account. We had confidence in this man, as he was well recommended. We hope and expect that most of our customers will return, as we do not believe they would be a party to any such 'scoop' if they knew the circumstances. We understand that negotiations for this deal have been in progress for some time. The public can form their own opinion of a man who will do this, or a firm who will employ him to do it. Pay no money to Isaac Call on our account. Respectfully, The City Laundry, J. E. Hayes, Proprietor."

Trial in the Superior Court, before *Braley*, J., who allowed a bill of exceptions, in substance as follows.

The plaintiff testified that he was twenty-six years of age, a married man, living with his wife and child in Lynn; that he had been at work for the defendant for about a year prior to August 11, 1895; that his business was that of driving a team and collecting laundry work, and delivering the same and collecting money for the same; that about two weeks prior to August 11, he took a man by the name of Bowley on his team

with him for the purpose of teaching him the route; that it was his intention to take a vacation of two weeks; that he saw the defendant on August 11, and told him that he came to get his bills, so as to fix them for Bowley the next day, and that he would go with Bowley on Monday, the following day, to help him; that the defendant said, " I guess I won't need you any longer "; that he asked the reason, and the defendant said, " You have n't been as good a man as I wish I had on the route "; that he replied, " All right, Mr. Hayes, then I shall consider myself discharged, will I not ? " and the defendant replied, " Yes "; that he said, " All right, I would like to have a settlement "; that the defendant replied that he did not make any settlements on Sundays, that Tuesday afternoon was the regular time that he had to make a settlement, and was the time when he would settle with him, and the plaintiff said, " Very well "; and that the defendant said, " I shall hold you responsible for every cent that there is on my books."

The plaintiff further testified, against the objection and under the exception of the defendant, as follows:

" *Q.* I want to know if on Monday you sent any communication to the defendant?  *A.* I did, sir, Monday noon.

" *Q.* By whom did you send it?  *A.* By Albert Bowley.

" *Q.* What was that communication?  *A.* I asked Mr. Bowley to ask Mr. Hayes if I could make a settlement with him Monday evening, either at his house or office, whichever was most satisfactory to him.  I told Mr. Bowley to tell him the reason was that I was working for Kelley and Batchelder, and did not want to infringe on their time."

Bowley testified, without objection, that he communicated this language to the defendant on Monday afternoon; that the defendant replied that he would not settle with the plaintiff until Tuesday noon; and that the witness so told the plaintiff, as a reply from the defendant.

The plaintiff further testified that he made arrangements with Kelley and Batchelder on the same Sunday, namely, August 11, to go to work for them in the same line of business that he had been engaged in before for the defendant; that he was arrested, upon the complaint referred to in the first count of the declaration, on Tuesday morning, August 13; and that he was discharged upon the complaint on the next day.

The plaintiff introduced in evidence the complaint, and also the record of the Police Court of Lynn, showing that upon a hearing the plaintiff was discharged; and that the proceedings in that court were terminated before the present action was begun.

The plaintiff testified, on cross-examination, that, about two weeks prior to August 11, he spoke to the defendant about going on a vacation, and the defendant told him that he did not want him to go; that, on Monday morning, while he was at work for Kelley and Batchelder, he collected money belonging to the defendant, substantially the amount charged in the complaint referred to in the declaration; and that he did not turn over this money until after he was arrested, but at the time of collecting it he informed the persons who paid it that he was not in the employ of the defendant.

The plaintiff further testified that on Monday morning, when he went to work for Kelley and Batchelder, he went over some part of the route which he had formerly covered when at work for the defendant, and got as many of the customers' laundry as he could get, and brought the work to the shop of Kelley and Batchelder, but that he informed every customer of his discharge, and solicited the work for Kelley and Batchelder.

John M. Kelley, a witness for the plaintiff, testified that on Sunday, August 11, he saw the plaintiff, and made arrangements with him to go to work for his firm, namely, Kelley and Batchelder; and that prior to that day there had been no negotiations whatever between the plaintiff and his firm for the plaintiff to go to work for them.

Albert R. Bowley, a witness called by the plaintiff, testified that he was on the team with the plaintiff for about two weeks prior to August 11, learning the route; that on Monday, August 12, he saw the defendant, who told him that he had discharged the plaintiff, and asked him if he was willing to go on the route and help him; and that he went on the route Monday morning, in place of the plaintiff, taking the defendant's team, and collecting for him all the laundry work he could get.

The witness testified, on cross-examination, that the plaintiff told him that he had got through work for the defendant Sunday afternoon; and that the reason for it was because the plaintiff insisted upon having his vacation.

The defendant, on cross-examination, admitted that he instituted the prosecution of the plaintiff for the purpose of getting back his money and his customers. One Wadleigh, a witness called by the plaintiff, testified that the defendant testified in the Police Court of Lynn that his object in instituting the prosecution was to get back his customers and accounts; and that the defendant also testified that he held the plaintiff responsible for all the accounts on the book.

It was admitted that the defendant published the alleged libel, set forth in the second count of the declaration, in the Daily Evening Item; and that that paper had a daily circulation of about ten thousand copies.

The defendant asked the judge to instruct the jury that, upon the evidence offered by the plaintiff, he had failed to prove want of probable cause, and to return a verdict for the defendant upon the first count; and also to instruct the jury that no cause of action was set out in the second count of the declaration, and to return a verdict for the defendant on that count. The judge refused to rule as requested; and the defendant excepted. The case was submitted to the jury, with full instructions, to which no exceptions were taken.

The jury returned a verdict for the plaintiff on both counts; and the defendant alleged exceptions.

*J. H. Sisk*, for the defendant.

*W. H. Niles & G. J. Carr*, for the plaintiff.

BARKER, J. 1. The complaint on which the count for malicious prosecution is founded charged the embezzlement of money. It was material for the present plaintiff to show, in support of the count, that he had a right to collect the money from the defendant's customers, and to retain it until the time of the settlement between the defendant and the plaintiff, which the former had appointed for Tuesday, the next day after the collection of the money. The plaintiff's testimony that the defendant, in discharging the plaintiff, told him that he should hold him responsible for every cent there was on his books, and that he would settle with him on Tuesday afternoon, tended to show the plaintiff's right to collect the money. That he communicated to the defendant on Monday the information that he would make a settlement with him on Monday evening was a circumstance

material to the question whether, when, on Tuesday morning, the defendant instituted the prosecution, he had reasonable cause to believe the plaintiff guilty of embezzlement. As the communication was through a third person, who testified that he delivered it on Monday to the defendant, the plaintiff's testimony that he instructed the third person to make the communication was competent, and was properly admitted.

2. The other exception relating to this count is to the refusal to instruct the jury that, upon the evidence offered by the plaintiff, he had failed to prove want of probable cause, and to return a verdict for the defendant upon the first count. Assuming that the defendant introduced no evidence, and that the evidence offered by the plaintiff was not in dispute, it was sufficient to show want of probable cause for the institution of the prosecution. The defendant discharged the plaintiff from his service on Sunday, informing him at the time that he should hold him responsible for every cent there was on his books, which implied that, if not already collected from the customers, it must be got in, and that he would settle with him on Tuesday afternoon. On being informed on Monday that the plaintiff would settle with him on that evening, the defendant declined, and caused the plaintiff to be arrested on Tuesday morning on the charge of embezzlement, which was founded upon the plaintiff's having collected on Monday the one dollar and sixty cents, and converted it to his own use, and the defendant himself admitted that he instituted the prosecution for the purpose of getting back his money and his customers, and he had testified in the hearing upon the complaint that he held the plaintiff responsible for all the accounts on his books. All this was enough to show want of probable cause for the prosecution, and in submitting the case to the jury the presiding justice in effect so ruled.

3. The request to instruct the jury that no cause of action was set out in the count for libel was in effect a request to rule, as matter of law, that the published words were not defamatory. It is only when the court can say that the publication is not reasonably capable of any defamatory meaning, and cannot be reasonably understood in any defamatory sense, that such a ruling as that requested can be given. *Twombly* v. *Monroe*, 136 Mass. 464. Odgers, Libel & Slander, (2d ed.) 25. This pub-

lication could be reasonably understood to mean that the plaintiff had forfeited the defendant's confidence, had perpetrated a transaction characterized as a "scoop," to which right-minded people generally, constituting the public, would not be a party, and that the public should form of him a bad opinion. The request was rightly refused. It was the duty of the presiding justice to submit the count to the jury upon the evidence, and the bill of exceptions states that it was submitted to them with full instructions, to which no exception was taken.

*Exceptions overruled.*