## ETEENPAIN CO–OP. SOC., Inc., v. LILLBACK.

Circuit Court of Appeals, First Circuit.
April 7, 1927.

No. 2075.

**1. Appeal and error ⬅671(3)—All evidence relating to questions raised on review should be brought up.**

All the evidence, so far as relating to questions sought to be raised on review, should be brought up.

**2. Appeal and error ⬅605—Evidence should be in record in order in which introduced.**

Arrangement of evidence in record in order not that in which introduced tends to mislead and confuse, and should not be permitted.

**3. Appeal and error ⬅750(9)—Assignments of error to denial of new trial present nothing for review, except as they relate to verdict or subsequent matters.**

Assignments of error to ruling on motion for new trial presents nothing for review, except in so far as they relate to the verdict or matters occurring subsequent thereto.

**4. Libel and slander ⬅123(2)—Submission to jury of libelous character of newspaper article, charging minister with weeping for cash over corpse at funeral, held not error.**

Submission to jury whether newspaper article, picturing minister as hypocrite, shedding tears for cash over corpse at burial service, was libelous, *held* not error; the language being capable of being reasonably understood in a defamatory sense.

**5. Witnesses** ☞372(2)—**Questioning witnesses for defendant Socialist newspaper, whether they belonged to left wing of Socialist party, held permissible, to show bias in minister's libel suit.**

Examination of defendant's witnesses in minister's libel suit against official newspaper of Finnish Socialist Federation, to determine whether they belonged to the left wing of the Socialist party, was permissible, not as evidence of malice, but as bearing on bias of witnesses.

**6. Libel and slander** ☞123(6)—**Previous publications, with other evidence, held to warrant submission of actual malice in newspaper libel of minister.**

Previous publications in Finnish Socialist newspaper, attacking plaintiff, a minister of religion, together with other evidence, held to warrant submission to jury of question of actual malice in publishing libelous articles.

**7. Libel and slander** ☞124(3)—**Instruction that malice is presumed from falsity of publication held not in contravention of statutes declaring plea of truth no evidence of malice, and truth, without proof of actual malice, justification (G. L. Mass. c. 231, §§ 91, 92).**

Instruction that law presumes that false statements were uttered maliciously held not erroneous, or in contravention of G. L. Mass. c. 231, §§ 91, 92, which make truth of publication a justification, unless actual malice be proved, and removes effect of plea of truth as evidence of malice.

**8. Libel and slander** ☞124(3)—**Instruction defining "actual malice," and distinguishing it from implied malice, held not erroneous.**

Instruction defining "actual malice" as actual malevolent intent or motive actuating willful injury of another, and distinguishing it from the malice implied from the mere publication of defamatory statements, held not erroneous.

[Ed. Note.—For other definitions, see Words and Phrases, Actual Malice.]

**9. Appeal and error** ☞1050(1)—**Admission of evidence previously received without objection as part of exhibit is not reviewable.**

Error cannot be predicated on the admission of evidence previously received without objection as part of contents of exhibit.

**10. Evidence** ☞317(1)—**Testimony that witnesses had investigated and found libel of minister to be cause of decrease in Sunday school attendance held competent in libel suit.**

Testimony that witnesses had investigated decrease in attendance at Sunday School, and found it due to articles in defendant's newspaper defaming pastor, held competent in pastor's libel suit, even if resting on what parents told witnesses as reasons for withholding children.

**11. Libel and slander** ☞107(1)—**Evidence that church revenue decreased after publication of article libeling pastor held competent.**

Evidence that, subsequent to newspaper publication defamatory of pastor, income of congregation decreased, held competent.

18 F.(2d)—58

In Error to the District Court of the United States for the District of Massachusetts; Elisha H. Brewster, Judge.

Action at law by John E. Lillback against the Eteenpain Co-operative Society, Inc. Judgment for plaintiff, and defendant brings error. Affirmed.

Marvin M. Taylor, of Worcester, Mass., for plaintiff in error.

J. Alfred Anderson, of Boston, Mass. (Anderson & Anderson, of Boston, Mass., on the brief), for defendant in error.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

BINGHAM, Circuit Judge. This is an action of tort for libel, brought by John F. Lillback, a citizen of Brooklyn, N. Y., against the Eteenpain Co-operative Society, a Massachusetts corporation, the publisher of a newspaper at Worcester, Mass.

The declaration, as originally drawn, contained six counts, but at the trial counts 1, 2, 3, and 4 were waived.

In the fifth count it was alleged:

"Count 5. And the plaintiff says that he is a minister of the gospel, and is employed as such by several congregations, and has been employed as such for a long period of time; that the plaintiff is married, and that his wife is living, and that he has been married during the entire period of his ministerhood; that the defendant is a corporation publishing a newspaper entitled Eteenpain in the city of Worcester, commonwealth of Massachusetts, which paper has a large circulation in New York and Massachusetts, where the plaintiff is employed and has been employed as a minister; that the defendant, intending to injure the plaintiff, on the 14th day of March, 1924, falsely and maliciously published in said newspaper an article charging the plaintiff with the crimes of adultery or fornication by words published in the Finnish language, as follows: (Setting out the publication in the Finnish language), which words translated into the English language are as follows:

"'We American Finns carry in fresh memory a certain Finnish preacher from Massachusetts, who cared for several small congregations, and in connection with caring for souls, rendered quite liberal help to the female members of his congregations, even to such an extent that the congregations received unexpected little ones as members. Such an increasing of population did not satisfy the male members of the congregations, and consequently they requested an account-

ing from their teacher regarding his caring of female members; but the pastor, being a glib-tongued preacher, explained that, instead of asking from him too much in regard to morality, fellow believers should earnestly pray for his soul, as he had under the guidance of God gotten in sinful temptation, and God had chosen him as an example for other members of the congregation, as they had not been ardent believers, because even the teacher of the congregation has erred. This explanation was sensible enough and the preacher was forgiven.'

"That the plaintiff suffered great anguish in body and mind, and has been put to great expense and loss on account of said publication, all to the great damage of the plaintiff."

The sixth count reads:

"Count 6. And the plaintiff says that he is a minister of the gospel, and has been such for a long period of time, and is employed as a minister by several congregations, and has been employed in Massachusetts by several congregations, and is dependent on his said profession for livelihood; that the defendant is a corporation engaged in publishing a newspaper entitled Eteenpain in the city of Worcester, commonwealth of Massachusetts; that the said paper is published in the Finnish language, and has a large circulation in places where the plaintiff has been employed and is still employed as a minister; that the defendant, intending to injure the plaintiff in his said profession and calling, on the 14th day of March, 1924, falsely and maliciously published an article in said newspaper in the Finnish language, a copy of which article is hereto annexed, marked E, and a translation of the said article is hereto annexed, marked F; that the plaintiff has lost money and employment by reason of said publication, and has been put to great expense and worry by said publication, all to the great damage of the plaintiff."

Exhibit F is a part of the article published in the issue of March 14, 1924.

Count 5 is based on the theory that the allegations of that count, which include the first paragraph of Exhibit F, charge the plaintiff with the crime of adultery.

Count 6 was originally based on so much of the article of March 14, 1924, as is contained in Exhibit F, but before the trial the plaintiff waived, as a basis for this count, so much of Exhibit F as referred to his son, and the court in its charge to the jury withdrew from its consideration the paragraph commenting on the article written by the plaintiff, attacking the Finnish Socialist Club of Brooklyn, and upon which he was sued, on the ground that the statements there made, as a matter of law, were not libelous. Count 6, therefore, as submitted to the jury, was based upon the published statements contained in the first paragraph of Exhibit F (heretofore set out in count 5 of the declaration), and the fourth paragraph of Exhibit F reading as follows:

"Pastor John E. Lillback, by the similarity in the name, reminds us of a certain religionist of the same name, who a few years ago was remarkably interested in the unraveling of a certain criminal case, which finally ended in roasting by electricity a certain Finnish youngster, who had gone wrong. In this case the pastor first was informant against this poor youngster, then his defender, and finally dragged the corpse of this youth into his church, and, as the corpse represented the first Finn that ever had been killed by electricity, great numbers of people flocked to see the corpse—exposition arranged by the pastor. The pastor prayed and shed tears beside the corpse, and diligently took up a collection. Of course the collection did not revive the deceased, but nevertheless the efforts of the arranger of this exhibition were amply rewarded."

The plaintiff is a minister of the gospel in a Finnish Congregational Church in Brooklyn. He is of Finnish nationality, as are substantially all of the members and congregation of his church.

The defendant corporation was organized in 1922, and among other business enterprises it conducts a daily newspaper called the Eteenpain, which it publishes in the Finnish language and circulates chiefly among readers of that nationality. The Eteenpain in 1921 was published in Brooklyn, but a little later was removed to Worcester, where it is now published. Its subscribers in Worcester are mainly the same as they were in New York, and it is supported by the same groups of societies and clubs. All its stock is held by 253 Finnish Socialist clubs located in various parts of the United States; no individual being allowed to own its stock. The Finnish Socialist Federation, an organization extending over the United States, is its largest stockholder. The Eteenpain is an official mouthpiece of the Finnish Socialist Federation and the clubs constituting the federation, and its stock is owned by the federation and these clubs that are affiliated with it. The Brooklyn Socialist Club, mentioned in the article upon which the libel is based, holds 200 shares of the stock. The plaintiff has openly and vigorously opposed the teachings,

doctrines, and activities of the Brooklyn and New York Socialist Clubs, and in 1918 the Brooklyn Club brought suit against him for libel, which he allowed to be defaulted.

The manager of the defendant's paper testified that the first time he read the article of March 14th was after the present suit was brought. He would not say that he did not know it was to be published before he saw it in the paper. The paper had five editors, some of whom were editors at the time of the trial. None of them were called by the defendant. In 1922 the Socialist party of the Finnish Socialist Federation split into two groups or wings. One of these groups controlled the Socialist paper Raivaja, in Fitchburg, but whether this group called themselves the right wing did not appear, nor that the other wing, whatever it was called, was connected in the establishment of Eteenpain in Brooklyn. It did appear that Eteenpain did not represent the Communists, except as to a few Finnish locals. The plaintiff was especially active against the Finnish Socialist Clubs of Brooklyn and of New York. He wrote and had published a scathing article about them. This caused one of the clubs to bring the suit above mentioned against him. As a result of his activities against them, the members of the club threatened his life and to oust him from the Christian ministry. These threats continued from the time they sued him down to the publication of March 14, 1924, in the defendant's paper. On March 12 and 13, 1924, preceding the issue of March 14, 1924, the defendant published articles attacking the plaintiff, and other articles were published in its paper about him before the series of articles of March 12, 13, and 14, 1924, came out. The articles of March 12th and 13th were put in evidence as bearing upon the defendant's state of mind toward the plaintiff and showing malice. There was also evidence of this character to the effect that extra copies of the issue of March 14, 1924, were mailed to and received by members of the plaintiff's congregation in Brooklyn.

The defendant in its answer admitted the publication of the article contained in the issue of March 14, and during the course of the trial admitted the publication of the articles of March 12th and 13th, and agreed upon the translations of all these articles, and that they referred to the plaintiff. The defendant further answered that the publications were not as a matter of law libelous, that the facts set forth therein were true, and denied malice in making the same.

Under the laws of Massachusetts, a plea of the truth and want of actual malice is recognized as a defense. Gen. Laws Mass. c. 231, § 92, provide: "The defendant may introduce in evidence the truth of the matter contained in the publication charged as libelous; and the truth shall be a justification unless actual malice is proved."

[1, 2] All the evidence introduced at the trial is not made a part of the record. This renders it difficult to understand some portions of the testimony, and particularly the circumstances under which it was introduced. It is evident that portions of the evidence brought here had been previously dealt with at the trail, and, to get its true setting, the evidence previously introduced, so far as it relates to questions sought to be raised by the transfer, should have been brought here. It is also apparent that the evidence is not arranged in the order in which it was introduced. This should not be permitted, for it does not present the true relation, makes the record more difficult to understand, and tends to confuse and mislead.

In the District Court the jury found a verdict for the plaintiff. Judgment was entered thereon, and this writ of error prosecuted. There are 45 assignments of error. The fortieth to the forty-fifth relate to the denial of the defendant's motion for a new trial; the thirty-first, to the denial of the defendant's motion at the close of the testimony to strike out certain evidence; the thirty-second to the thirty-seventh, to the refusal of the court to charge the jury as requested by the defendant; the thirty-eighth and thirty-ninth to exceptions to the charge to the jury; and the first to the thirtieth, to the admission of evidence. We will first consider the assignments relating to the motion for a new trial.

[3] These assignments, so far as they relate to matters occurring during the course of the trial and prior to the verdict, are not open to review on this motion; but so far as any of them relate to the verdict or matters occurring subsequent thereto they are subject to review, for this is practically the only way such errors, if any, can be raised and reviewed. The fourth ground of the motion, therefore, is open to review. It is in substance that the verdict of the jury was a general one, and, being general, it could not be said whether it was rendered upon count 5 or count 6; that if one of these counts was defective, in that the publication upon which it was based was, as a matter of law, not libelous, the verdict could not be sustained as it could not be said that it was not rendered upon the defective count; that count 6 was de-

fective in this particular, and, therefore the verdict should be set aside. In count 5 the plaintiff alleges that he was injured by the false and malicious publication contained in the article of March 14, 1924, charging him with adultery—the slanderous publication contained in the first paragraph of Exhibit F. In the sixth count the plaintiff alleges that he was injured in his profession and calling as a minister by the false and malicious publications contained in the article of March 14, 1924, so far as they appear in Exhibit F, and we have previously pointed out that the particular paragraphs of Exhibit F submitted to the jury as slanderous were paragraphs one and four of Exhibit F. It thus appears that paragraph 1 was relied upon as a slanderous publication under both counts. This paragraph, read in connection with the other allegations of count 5, to the effect that the plaintiff was a married man at the time of the publication, charges him with the crime of adultery, and is slanderous as a matter of law. Whether the publication contained in paragraph 1, taken in connection with the other allegations of count 6, charged adultery or not, is immaterial. They surely charge him with immoral relations with the female members of his congregations, which is undoubtedly slanderous as a matter of law. This is conceded.

[4] It is, however, contended by the defendant under this assignment, and the same question is raised by assignment 32, that the language used in the fourth paragraph of Exhibit F, concerning the Waltonen matter, and heretofore set out, was not libelous and that a jury would not be warranted in finding that it was libelous—that its language was such that it had no tendency to degrade or disgrace the plaintiff, and render him odious, or to hold him up to ridicule or contempt in the estimation of the public, and injure his reputation for integrity and moral worth as an individual, or as a member of his chosen profession, and, this being so, the judgment and verdict cannot stand.

We are, however, of the opinion that the language of the fourth paragraph is such that it may reasonably be understood in a defamatory sense; that it pictures the plaintiff as a humbug and hypocrite, shedding tears for cash over a dead body at a burial service; that it is not only of a character that tends to hold the plaintiff up to ridicule and scorn, to his injury, but to disgrace the sacred right of burial. The defendant cannot complain because its libelous character was submitted to the jury. It was not harmed by so doing.

In Call v. Hayes, 169 Mass. 586, 591, 48 N. E. 777, 778, the court in passing on a like question said: "The request to instruct the jury that no cause of action was set out in the count for libel was in effect a request to rule, as matter of law, that the published words were not defamatory. It is only when the court can say that the publication is not reasonably capable of any defamatory meaning, and cannot be reasonably understood in any defamatory sense, that such a ruling as that requested can be given." See, also, Twombly v. Monroe, 136 Mass. 464, 469; Fay v. Harrington, 176 Mass. 270, 273, 57 N. E. 369; Shattuck v. Allen, 4 Gray (Mass.) 540, 546; N. Y. Evening Post Co. v. Chaloner (C. C. A.) 265 F. 204, 219. The defendant takes nothing by its assignments of error 32 and 40 to 45, inclusive.

The thirty-ninth assignment concerns that portion of the charge relating to the so-called Waltonen case, which we have just discussed. There the court simply submitted the question whether the language used in the fourth paragraph of Exhibit F contained matter of a libelous character. The instruction was proper.

[5] At the close of the evidence the defendant requested the court to strike out all testimony relative to the left wing of the Socialist party, the Third International, the Communists and the Soviet government. This request was denied and properly. No evidence was introduced before the jury as to the Soviet government or the Third International. As bearing upon the credibility of the defendant's witnesses, the plaintiff was allowed to interrogate them as to whether they belong to the left wing of the Socialist party. This was permissible. The jury were instructed to consider the evidence only "as bearing upon the bias of the witnesses, and not because it has any tendency to show malice." This disposes of the thirty-first assignment of error.

[6] The thirty-third and thirty-fourth assignments relate to the ninth and tenth requests for instructions to the jury. If the ninth request was properly denied, the tenth need not be considered, for it is based upon the assumption that the ninth should be given. The ninth request in substance was that there was no evidence from which the jury would be warranted in finding actual malice. We have no hesitation in saying that this request was properly denied, for there was abundant evidence of actual malice. The published articles of March 12, 13, and 14, 1924, were in themselves sufficient to warrant a submission of the question, and there

was other evidence, some of which has been heretofore set out.

The thirty-fifth, thirty-sixth, and thirty-seventh assignments relate to the eleventh, fourteenth, and fifteenth requests for rulings. These need no consideration, for they have been waived.

[7] The thirty-eighth assignment relates to the charge, wherein the court instructed the jury as to the meaning of the terms "libelous publication" and "malice." After pointing out that the defendant had the right to show that the publication was true, and that, if true, it would not be liable, unless the plaintiff satisfied the jury by a fair preponderance of the evidence that the statement was made with express malice, the court proceeded to define what he meant by express malice, and by a defamatory or libelous publication, and in defining the latter said: "Now, a libel has been defined as any written or printed words, which have a tendency to degrade or to disgrace the person about whom they are published, and to render him odious, or to hold him up to ridicule or contempt in the estimation of the public, or, as a publication obviously intended to subject one to public contempt, and to injure his reputation for integrity, moral worth, not only as an individual, but as a member of his chosen profession. Now any statement that comes within the scope of the definition is to be regarded as libelous, and libelous per se. By that I mean the law will imply that they were uttered maliciously, if it turns out that these statements are false." We see nothing erroneous in this instruction. The defendant, however, makes the contention in its brief that the last sentence of the quoted clause is incorrect, when taken in connection with sections 91 and 92, c. 231, of the Massachusetts Statutes. This special matter was not called to the attention of the court at the trial, when it might have been corrected, if erroneous, and for this reason is not open to the defendant at the present time. It may be said, however, that section 91, c. 231, was enacted to do away with some early decisions in Massachusetts, allowing facts admitted in a plea of the truth to be used as proof of facts alleged in the declaration, the general issue also having been pleaded. Alderman v. French, 1 Pick. (Mass.) 1, 7, 11 Am. Dec. 114; Jackson v. Stetson, 15 Mass. 48, 56; Hix v. Drury, 5 Pick. (Mass.) 296. It amounts to nothing more than that a plea of the truth, in an action for slander, shall not of itself be proof of malice. The court in its instructions to the jury did not contravene this provision of law.

[8] In charging the jury as to the meaning of the words "express malice," the court said: "It is the willful doing of an injurious act without lawful excuse. It is an actual malevolent intent, which is required by the statute, malevolent in motive. It is something more than the malice which is implied by the publication of defamatory statements, which are false. Here we have to have some actual malicious intention on the part of the publisher to work an injury to the party concerning whom the statements have been published. That is what I mean by express malice. It is real, actual malice, as distinguished from implied malice." This instruction was correct. See Clark v. Brown, 116 Mass. 504, 507; Burt v. Advertiser Co., 154 Mass. 238, 28 N. E. 1, 13 L. R. A. 97; Dow v. Long, 190 Mass. 138, 76 N. E. 667; 36 C. J. 1217.

[9] The first and second assignments relate to the admission of testimony given by the defendant's manager that the paper published by the defendant and containing the articles complained of was an organ of the "Finnish Federation," or "Finnish Socialist Federation." These assignments are without merit. The evidence objected to had already been admitted. It was so stated in the issue of the paper of March 14, 1924, which had previously been introduced in evidence as Exhibit 1 without objection.

The third assignment purports to relate to the introduction of certain rules and regulations of the Finnish Federation, but the record shows that these rules and regulations were excluded.

The fourth assignment relates to testimony said to have been given by the defendant's manager as to compliance, on March 14, 1924, by the defendant with the rules and regulations referred to in the previous assignment. But the rules and regulations had been excluded, and no evidence of compliance with them was given.

The fifth assignment relates to the same matter as the fourth and needs no further consideration.

The sixth, seventh, and eighth assignments relate to testimony given by the defendant's manager concerning the number of shares of stock in the defendant's corporation held by the Finnish Federation in Chicago. This evidence was competent. Furthermore, the fact had already been shown by the defendant's stock book, which had been put in evidence without objection, and gave the names of the stockholders and the number of shares held by each.

The ninth assignment relates to an inquiry made of the defendant's manager as

to whether the Brooklyn Co-operative Society is a Socialistic or Communistic corporation, but the witness' answer was that he didn't know.

The tenth assignment relates to questions put to the same witness as to whether it was a fact that the left wing lost the control of the Raivaja, the other socialist paper published in Fitchburg, and established this paper (meaning the Eteenpain) to be the organ of the left wing or the Workers' party affiliation, and as to whether there was a left wing in the Socialist party. The difficulty with this assignment is that, while the witness was asked about the left wing losing control of Raivaja, and whether Eteenpain was asked to be the organ of the left wing, due to the vigilance of the defendant's counsel, neither question was answered. There was evidence that there was a split in the Finnish Socialist party in 1920, but the witness pleaded ignorance of the names by which the groups were called.

The eleventh, twelfth, thirteenth, fourteenth, and fifteenth assignments relate to the same matter covered by the tenth assignment, and are without merit.

The matter complained of in the sixteenth assignment was stricken out, except so far as it tended to show the plaintiff's hostility to the New York and Brooklyn Clubs, which were members of the Socialist party in New York, and the hostility of those clubs towards him. The defendant cannot complain of this, for it had previously shown the hostile attitude of these parties toward each other by introducing the record in the suit brought by the Brooklyn Club against the plaintiff, and the article published by the plaintiff upon which that suit was brought.

The seventeenth, eighteenth, and nineteenth assignments do not differ materially from the sixteenth. The matter complained of there simply shows the continuation of the hostility of the Brooklyn Club and its members down to the publication of the libelous articles here in question.

The twentieth assignment has no foundation in fact. The matter there complained of was not put in evidence.

[10] The twenty-first, twenty-second, twenty-third, twenty-fourth, and twenty-fifth assignments relate to testimony introduced by the plaintiff, showing that after the publications complained of the children ceased to attend the plaintiff's Sunday school and the cause therefor. The witnesses as to this matter were allowed to testify that they made investigations as to the cause and found it was due to the articles published. The defendant complains that this testimony involved what the fathers or mothers told them was their reason for withholding the children from the Sunday school and was hearsay. If this were true (which is not made to appear), we think that it was only explanatory of the act of the parents in withholding the children from attendance, and for this reason was competent.

[11] The twenty-sixth, twenty-seventh, and twenty-eighth assignments relate to the introduction of evidence showing a decrease in the income of the congregation of the plaintiff's church subsequent to the publication complained of. We regard this evidence as competent.

The twenty-ninth assignment of error is without merit. The matter there complained of was stricken out.

The thirtieth assignment relates to testimony given by one of the defendant's witnesses on cross-examination. The question and answer were allowed only as affecting the witness' credibility. We see no error in this.

The judgment of the District Court is affirmed, with costs to the defendant in error.

ANDERSON, Circuit Judge, concurs in the result.