AUBERT J. FAY & others *vs.* JOHN H. HARRINGTON.

Middlesex. March 13, 1900. — June 1, 1900.

Present: HOLMES, C. J., KNOWLTON, MORTON, & BARKER, JJ.

*Libel — Action — Special Damage — Demurrer — Law and Fact — Evidence.*

An article in a newspaper, charging the proprietor of a theatre with discriminating unfairly against the Irish population in his business of giving entertainments to the public, is not actionable in the absence of any allegation or proof of special damage.

Overruling a demurrer to a count in libel does not necessarily mean more than that the judge cannot say as matter of law that the words are not libellous.

Where the real issue in an action for libel is whether the articles in a newspaper complained of are reasonable criticisms of the plaintiff's methods of conducting his business of giving entertainments to the public, the judge rightly refuses to rule that the articles are libellous unless they are true, and properly submits the whole question of the defendant's liability to the jury.

If a newspaper reprints an article from another paper which has reprinted with comments an article in the first named paper, for the publication of which an action for libel is brought, the judge rightly refuses to rule that the defendant is liable for the reprint, which is not counted upon, but is put in evidence, and rightly leaves its effect as evidence of malice to the jury.

The malice required by Pub. Sts. c. 167, § 80, to rebut the defence of truth in an action for libel is actual malevolence in motive.

In an action for libel, in publishing the statement that a theatrical performance was indecent, evidence that the costumes worn by the women who danced on the stage at the performance were similar in style to those usually worn by women dancing on the stage at public performances, is properly excluded.

TORT, in several counts, for libel. At the trial in the Superior Court, before *Fessenden*, J., the jury returned a verdict for the defendant; and the plaintiffs alleged exceptions, which appear in the opinion.

*W. H. Bent,* for the plaintiffs.

*J. J. Hogan,* for the defendant.

HOLMES, C. J.    This is an action for alleged libels, and has been tried twice in the Superior Court.    At the first trial, after a verdict for the defendant, a bill of exceptions was allowed, which is before us.    A motion for a new trial also was made, and the verdict was set aside " as to that part of the plaintiffs' claim which relates to injury from plaintiffs being brought into public hatred and contempt," and a new trial was ordered upon the condition that the plaintiffs should claim only on that ground. A second trial was had, which resulted in a second verdict for the defendant, and at this trial a second bill of exceptions was allowed, which also is here.    The peculiar order seems to have been made because of a misunderstanding which had prevented the plaintiffs from presenting their case fully; and without further explanation we shall assume, as both counsel assume, that the first exceptions were not waived by what was done after they were allowed.

The plaintiffs are the proprietors of a theatre in Lowell, called the Opera House, and the defendant is the owner and publisher of a newspaper called The Lowell Daily Sun.    The alleged libels are articles published in that paper.    The first exception that we shall consider is to a ruling at the second trial that the articles were not libellous as charging the plaintiffs with discriminating unfairly against the Irish population, in their business of giving entertainments to the public.    This ruling was right in substance and effect, if not in form.    There does not appear to have been any allegation or proof of special damages, so that even if the articles had made the charge supposed they would not have been actionable.    It cannot be said that such a charge necessarily and in all populations would be hurtful in its effect upon a man's business.    It is true that at the first trial, when a similar question was raised, it appeared that " quite a large proportion " of the readers of the defendant's paper were Irish people, and that the Opera House audiences were partly Irish.    But even these facts are not enough to show that the statements would hurt the plaintiffs.

Moreover, it is doubtful, at least, whether the articles make the charge alleged.    The first one, entitled " Contrast at the

Theatres," after saying that there were two excellent Irish plays in Lowell last evening, one at the new Music Hall, the other at the Opera House, and that the Music Hall was crowded while the Opera House "was slimly attended," adds that "Music Hall has popular prices, the best seats in the house selling at 50c., while the management caters for all classes of people without discrimination. The Opera House charges from $1.00 to $1.50 for its best seats, and gives unmistakable evidence that certain people who form the bone and sinew of the town are not catered to." The beginning is to the effect that the public has discriminated against the plaintiffs, not the plaintiffs against any part of the public; and the article then suggests as a reason that the plaintiffs charge high prices and do not cater to the bone and sinew of the town. It is doubtful if the last words properly could be found to refer to the Irish rather than to the laboring class generally, and it is clear that they do not charge any improper discrimination, or anything more than a perfectly legitimate election as to what class of audience shall be sought.

The other article relied on has a heading declaring that the Sun will not be coerced, and is mainly devoted to an account of the Sun's controversy with the Opera House. In the course of it, it mentions the "well known contemptuous expressions" of the plaintiffs "concerning the very people to whom they looked for patronage on the night when their theatre was but partly filled and the new Music Hall crowded to the doors." Assuming that the people referred to were the Irish population, so far from charging a discrimination against them, this article indicates that the plaintiffs looked to them for patronage. It charges contemptuous expressions in conversation, and such a charge, if believed, might tend to keep the Irish away; but it does not charge unfair discrimination in the management of the theatre. So of an alleged statement by one of the plaintiffs that "the Opera House could get along very well without seeking the patronage of the particular class who read the Sun"; and so of the suggestion that the same plaintiff, "in the privacy of his office, came pretty near doing what he could not do publicly without putting out a sign 'No Irish need apply,' this he dared not do," etc. The only other statement which we notice, for none is pointed out on behalf of the plain-

tiffs, is that the same plaintiffs' ancestors " were respectable Irish people who would not countenance discrimination against any class," etc. This does not allege that the plaintiffs discriminated. The article as a whole appears rather to negative the notion and to make public private expressions to show that the plaintiffs perhaps would like to discriminate but did not dare.

We ought to add that these two articles were declared on in the tenth and eleventh counts as charging the plaintiffs with unfairly discriminating against the Irish, and that demurrers to the counts had been overruled. We shall deal next with the general effect of overruling a demurrer in an action for a libel. At this point it is enough to observe that if we assume that the judges who tried the case were bound by the decision on the demurrer, and that so long as they did not modify the record and sustain the demurrer to the tenth and eleventh counts, they were technically wrong in refusing to let the plaintiffs go to the jury, still they were right in their view of the substantive law and no harm was done. What we have said disposes of the second bill of exceptions and of a part of the first.

The next exception which we shall take up is to a refusal to rule at the first trial that as a demurrer to the several counts had been overruled, it was established as matter of law that the articles set forth were libellous, and that the defendant was liable unless he proved the truth of the matter alleged. An important part of the justification of the articles was not truth, but that they or parts of them were reasonable criticisms upon a matter of public interest. *Burt* v. *Advertiser Newspaper Co.* 154 Mass. 238, 242, 243. But leaving this on one side, the overruling of the demurrer did not have the effect attributed to it. We assume that so long as the order stood unreversed upon the record it was binding to the extent of its consequences upon judges of the same court at later stages of the case. But the plaintiffs exaggerate the consequences. Overruling a demurrer to a count in libel may mean, to be sure, that the words are libellous as matter of law; but it does not necessarily mean more than that the judge cannot say as matter of law that they are not libellous, in which case also he would overrule the demurrer, but would leave the question to the jury. *Twombly* v. *Monroe*, 136 Mass.

464, 469, 470. *Shattuck* v. *Allen*, 4 Gray, 540, 546. *Goodrich* v. *Davis*, 11 Met. 473.

The second ruling asked by the plaintiffs at the first trial was that certain articles were libellous as charging the plaintiffs with extortion and cheating, and that unless they were true the defendant was liable. The request rightly was refused. It is doubtful whether the articles properly could be said to make the charge supposed. They hardly alleged any disputed facts. They were criticisms upon the admitted facts. The real issue was whether they were reasonable criticisms. The judge was right enough in leaving to the jury the whole question of the defendant's liability for the articles on other grounds than that of tending to bring the plaintiffs into public hatred and contempt in the conduct of their business. As to the excepted ground there was a misunderstanding, and a new trial granted for that reason. The third ruling asked needs no further remark.

The fifth ruling asked was that certain articles were libellous as charging the plaintiffs with giving indecent and immoral shows in the conduct of their business. This is subject to the same criticism as the others, although, no doubt, on this question there may have been an issue of fact as well as of judgment. It is open to the further observation that the articles referred to a particular exhibition alleged to have been indecent, and hardly could be said to charge a habit, as the ruling asked implied. The question of liability on this ground also properly was left to the jury. Nothing special needs to be added about the sixth request, except that it strains the meaning of the articles.

The defendant reprinted an article from another paper which had reprinted with comments part of one of the articles sued on. There was no count upon this reprint by the defendant, but it was put in by the plaintiffs. The judge rightly refused to rule that the defendant was liable for it, and rightly left its effect as evidence of malice to the jury. We presume that malice was deemed material with reference to the defence of truth. Pub. Sts. c. 167, § 80. To rebut that defence an actual malevolent intent is required by the statute. So with regard to privilege, malice either is a misnomer for exceeding the privilege, or means actual malevolence in motive. This is all that we understand the judge to have said.

The only other exception argued relates to the exclusion of evidence that the costumes worn by the women who danced on the stage at a particular performance named were similar in style to those usually worn by young women dancing on the stage at public performances.   In many cases evidence of what is usual may be proper in the discretion of the judge.   *McMahon* v. *McHale*, 174 Mass. 320, 325, 326.   *Janvrin, petitioner*, 174 Mass. 514, 520.   But every man of the world knows that the costumes worn upon the stage by dancing women vary so widely, not only in measure but in suggestion, that in this case a reference to what is usual would be wholly uninstructive.   A witness who could testify upon that point could testify to what the actual costumes were.   The rest was for the jury.

*Exceptions overruled.*