CLARENCE E. HUBBARD *vs.* LOUIS B. ALLYN.

Hampden.      October 19, 1908. — November 24, 1908.

Present : KNOWLTON, C. J., MORTON, LORING, SHELDON, & RUGG, JJ.

*Libel and Slander. Evidence,* Presumptions and burden of proof, *Res gestae.*

The answer in an action of tort for libel, brought by a baker in Westfield against a member of the board of health of that town, set up as a defense that the alleged libel was true, was published without malice and consisted of a fair comment on a matter of public interest. At the trial it appeared that the defendant caused to be published concerning the plaintiff the following : " The recent finding of wood alcohol in the so-called vanilla used in one of our local bakeries brings a lesson of no little importance — the fallacy of expecting to get a large quantity of a good article for a small price. Such purchasers are among the greatest enemies and hindrances to the advent of pure food, inasmuch as they create a demand for cheap, worthless articles. Pure vanilla wholesales at about $12 a gallon. What can one expect for $2.75 ? He who buys at this price is either criminally stupid or deliberately dishonest. . . . The extract in question was an evil smelling concoction as innocent of vanilla as some saloons are of whisky. A dealer, as in the present case, stands absolutely without excuse for purchasing an article of this extreme character." There was no evidence that the plaintiff paid only $2.75 a gallon for the " extract in question," but he testified without contradiction that he paid $4 a gallon for it. There was adequate evidence of damage. The presiding judge refused to direct a verdict for the defendant, there was a verdict for the plaintiff and the defendant alleged an exception. *Held,* that a reasonable inference from the published article was that the defendant asserted that the plaintiff paid only $2.75 per gallon for the

" vanilla in question," and, because he had purchased the vanilla at such price, was " either criminally stupid or deliberately dishonest " ; that the jury well might have found that the plaintiff did not pay such a price for the vanilla and that consequently the article was neither a true nor a fair comment, and therefore that the exception must be overruled.

While one properly may criticise, discuss and comment in writing in a reasonable way upon acts of another which are a matter of public interest and upon the consequences likely to follow from them, and may do so with severity and by the use of ridicule, sarcasm and invective, if the basis of such criticism, discussion or comment is not fact, but falsehood, the publication is a libel.

Evidence, which is introduced at a trial without objection, and which, if it had been objected to, would have been excluded as incompetent, is entitled to its probative force.

At the trial of an action of tort for libel brought by a baker in Westfield against a member of the board of health of that town, it appeared that the alleged libel called attention to " the recent finding of wood alcohol in the so-called vanilla used in one of our local bakeries," stated that " a dealer, as in the present case, stands absolutely without excuse for purchasing an article of this extreme character," insinuated that such dealer bought his " so-called vanilla " for $2.75 per gallon, and stated that " he who buys at this price is either criminally stupid or deliberately dishonest." There also was evidence tending to show that previous to the publication of the libel the board of health had made two complaints in court against the plaintiff " with regard to the conduct of things in and about his bakery," one of which was dismissed by the court in which it was made before the publication of the alleged libel, and that the complaints were a subject of newspaper discussion at the time the alleged libel was published ; that the plaintiff was the only baker in Westfield upon whose premises so-called vanilla containing wood alcohol had been found, that just before the publication of the alleged libel an agent of the board of health had gone to the plaintiff's bakery and carried the keg containing the so-called vanilla across a main street of the town to the rooms of the board of health. There also was evidence that former customers of the plaintiff, in withdrawing their trade, stated that they did so because they understood that he was referred to in the article. The presiding judge refused to rule that there was no evidence that the article was published concerning the plaintiff, and the defendant excepted. *Held*, that the exception must be overruled, since there was evidence that the descriptive language of the alleged libel indicated, under the circumstances, to others than the plaintiff and the defendant, that the plaintiff was referred to in the article.

Where, at the trial of an action of tort for libel in which the defense set up in the answer is that the alleged libellous publication was true and was made without malice, there is no evidence that certain material statements in the alleged libel and inferences that might be drawn therefrom were true, the presiding judge properly may refuse to rule on the question whether there was any evidence of personal ill-will toward the plaintiff on the part of the defendant.

At the trial of an action of tort for libel brought by a baker in Westfield against a member of the board of health of that town, it appeared that the alleged libel was published by the defendant concerning the plaintiff in two local newspapers and related to the use by the plaintiff in his business of " so-called vanilla " containing wood alcohol, insinuated that the plaintiff paid $2.75 per gallon for it, stated that " he who buys at this price is either criminally stupid or deliberately dishonest. . . . A dealer, as in the present case, stands absolutely without excuse for purchasing an article of this extreme character,"

and characterized the use of such so-called vanilla as a "flagrant violation of public confidence and physical welfare." It also appeared that, before the board of health investigated what the plaintiff was using for vanilla, two complaints had been made by them against him in the local court, one of which the court had dismissed before the publication of the alleged libel, and the other of which afterwards was dismissed; that both complaints were then the subject of newspaper discussion; that, just before the publication of the alleged libel, an agent of the board visited the plaintiff's bakery, which was on a main thoroughfare of the town, and carried therefrom under his arm across the street to the rooms of the board a keg containing the "so-called vanilla." *Held*, that there was evidence from which a jury might have found that the defendant, in publishing the alleged libel, was actuated by such a feeling of ill-will toward the plaintiff as would render him liable for the damages resulting from the publication even if the statements therein had been true.

The fact that a single statement of fact in an alleged libel is true does not relieve the person who publishes the libel from liability to the person injured by its publication, if such true statement is so interwoven with false statements as to produce the effect of a fabrication.

The plaintiff in an action of tort brought by a baker against a member of a board of health to recover damages for the alleged publication of a libel charging the plaintiff with using in his business "so-called vanilla" containing wood alcohol, in order to prove the extent of his damages may introduce in evidence statements made by former customers in withdrawing their trade to the effect that they did so because of the statements in the libel.

TORT for a libel alleged to have been caused by the defendant to be published in two newspapers in Westfield, The Valley Echo and The Westfield Daily Times. Writ in the Superior Court for the county of Hampden dated January 1, 1907.

There was a trial before *Wait*, J., and a verdict for the plaintiff. The defendant alleged exceptions. The facts are stated in the opinion.

The case was submitted on briefs.

*F. A. Ballou*, for the defendant.

*A. L. Green & F. F. Bennett*, for the plaintiff.

RUGG, J. This is an action of libel for causing the printing in certain newspapers of an article alleged to have been false, malicious and defamatory, to have been published concerning the plaintiff and likely to injure him in his business, and to have caused him loss of patronage. The defense is that the statements were true and made without malice, and that the article consisted of fair comment on a matter of public interest.

The plaintiff is a baker. The defendant is an instructor in science in the State Normal School and a member of the board of health of Westfield. Certain samples of vanilla flavoring were

taken from the plaintiff by an agent of the board of health of Westfield, which, on analysis by the defendant, were found to contain a dangerous amount of wood alcohol. Thereafter the defendant wrote the article complained of, which, among other statements, contained the following: " The recent finding of wood alcohol in the so-called vanilla used in one of our local bakeries brings a lesson of no little importance — the fallacy of expecting to get a large quantity of a good article for a small price. Such purchasers are among the greatest enemies and hindrances to the advent of pure food, inasmuch as they create' a demand for cheap, worthless articles. Pure vanilla wholesales at about $12 per gallon. What can one expect for $2.75 ? He who buys at this price is either criminally stupid or deliberately dishonest. . . . The extract in question was an evil smelling concoction as innocent of vanilla as some saloons are of whisky. . . . A dealer as in the present case, stands absolutely without excuse for purchasing an article of this extreme character. It is the attitude of the local board of health to prosecute to the limit any such flagrant violation of public confidence and physical welfare."

The presiding judge ruled that the subject was one of public interest, and that the defendant had a legal right to publish fair and reasonable comment thereon without liability. The case comes before us on exceptions by the defendant to the refusal to give certain instructions and as to the admission of certain evidence.

1. A verdict could not have been directed for the defendant. A reasonable inference from the published article was that the writer asserted that the plaintiff paid $2.75 per gallon for the vanilla found on his premises, which contained the wood alcohol, a dangerously poisonous substance. There was no evidence whatever that the vanilla found on the plaintiff's premises cost him only $2.75 per gallon. The defendant, from his knowledge as to the cost of the several ingredients found to compose this fluid, estimated that it could be bought for that price, but made the assertion without any knowledge or information as to what the plaintiff in fact paid for it. The evidence of the plaintiff, which was uncontradicted, was that he paid $4 per gallon for it. Upon this statement as to price paid by the plaintiff, which the

jury may have found to be false, the defendant bases the declaration that the person who had bought at that price was either "criminally stupid or deliberately dishonest"; that he was "absolutely without excuse" for his action, which was also characterized as a "flagrant violation of public confidence and physical welfare." These comments and criticisms are wholly deduced from a premise, which the jury might have found to be untrue. It cannot be said, as matter of law, that a verdict could have been ordered for the defendant, who made such a publication touching one whose business was that of furnishing food. The jury would have been warranted in finding that the substantially harmful statement contained in the article was not as to the mere presence of wood alcohol in the vanilla, but that any honest or competent person would know from the low price paid that the vanilla was of such poor quality as to be deleterious to health. Reading the whole statement, the price named was not an unimportant incident, but the pivotal fact on which hung much of the rest. If the jury found this statement of fact to be false, then they would be justified in saying further that the article was not fair comment or reasonable criticism, but an unwarranted attack, whose manifest tendency was to injure the plaintiff in his business. *Haynes* v. *Clinton Printing Co.* 169 Mass. 512. The right of the defendant was not to make false statements of fact because the subject matter was of public interest, but only to criticise, discuss and comment upon the real acts of the plaintiff and the consequences likely to follow from them, or upon any other aspect of the case in a reasonable way. This may be done with severity. Ridicule, sarcasm and invective may be employed. But the basis must be a fact, and not a falsehood. *Burt* v. *Advertiser Newspaper Co.* 154 Mass. 238. *McQuire* v. *Western Morning News Co.* [1903] 2 K. B. 100. *Dow* v. *Long*, 190 Mass. 138. *Thomas* v. *Bradbury*, [1906] 2 K. B. 627.

2. It is argued that there was no evidence that the article was published concerning the plaintiff. The plaintiff's name is not mentioned in it. The subject of the article is named only as "one of our local bakeries," in which "wood alcohol in the so called vanilla" had been found, and "a dealer as in the present case." It may be conceded, as urged by the defendant,

that knowledge of the person referred to on the part of the writer and of the plaintiff alone would not be enough to show that it was published of the plaintiff. Such descriptive language must be used as to indicate to others some particular individual under the circumstances existing in the community. It appeared that the plaintiff was the only baker in Westfield upon whose premises vanilla containing wood alcohol had been found. The agent of the board of health had visited the plaintiff's place to get the samples, and a short time before the article was printed went to his bakery and carried the keg containing the so called vanilla across a main street of the town to the rooms of the board of health. One witness, a member of the board of health, testified that he knew when he read the article that the plaintiff was referred to. The plaintiff was permitted to testify that, from conversations with customers, he knew that it was understood that he was meant by an article published in a Springfield paper, which used substantially the same descriptive language. This evidence, though perhaps not competent if objected to, nevertheless being in without objection, was entitled to its probative force. *Damon* v. *Carrol*, 163 Mass. 404. It tended to show that such language in the then state of information of the public mind in Westfield would be understood as referring to the plaintiff, and that hence the defendant's article was so understood. The testimony of Raineault, that customers gave this article as a reason for not trading with the plaintiff, the exception to the admission of which will be discussed later, also had the same tendency. If competent for any purpose, it is not rendered incompetent by the fact that it also has a tendency to influence the mind in another direction, for which alone it would not be competent. *Whipple* v. *Rich*, 180 Mass. 477. *Weston* v. *Barnicoat*, 175 Mass. 454, 456. *Commonwealth* v. *Johnson*, 199 Mass. 55. If the defendant desired to have its application restricted, he should have made such request.

It may have been found to be the reasonable inference from this testimony that a reference to the local baker, in whose shop vanilla containing wood alcohol had been found, would point inevitably to the plaintiff. Whether the article was published concerning the plaintiff is generally a question of fact. There is nothing exceptional in the present case to take it out of the gen-

eral rule, but there was evidence enough to require submission to the jury.* *Hanson* v. *Globe Newspaper Co.* 159 Mass. 293.

The defendant has argued that the publication of advertisements by the plaintiff may have spread this knowledge. But the charge of the presiding judge is not given, and it must be assumed that ample instructions, covering this phase of the case, were given. Moreover, it is plain that the members of the board of health and its agent knew who was meant by "local dealer" as used in the article. Although they had joined in the expression of view that an article should be published, there is nothing to show that they intended to authorize the publication of a libel. The article was not shown to them in advance of being printed, nor its precise tenor communicated to them. It cannot be assumed that they intended anything more than that a fair comment upon the matter should be published.

3. The defendant requested a ruling in substance that there was no evidence of personal ill-will toward the plaintiff on the part of the defendant. This may have been refused properly on the ground that there was no sufficient evidence of the truth of the basic facts alleged respecting the plaintiff in the article. No testimony was introduced that the plaintiff paid $2.75 per

---

* During the course of the trial the plaintiff had testified that, after samples of what the plaintiff was using for vanilla were taken by the agent of the board of health and before the publication of the article in question, he "had some trouble" with the board of health, but was not allowed on cross-examination to state what the trouble was. The next day the presiding judge addressed the jury as follows: "Gentlemen, in consequence of the ruling which I made yesterday with regard to the admission of evidence as to the causes of trouble between the board of health and Mr. Hubbard, and of my subsequent change of view with regard to the law, we have arranged that I shall state this: That at the time or just shortly before the time of taking of the vanilla in Mr. Hubbard's bakery, there had been complaints made against him by the board of health with regard to the conduct of things in and about his bakery. One of those complaints had been dismissed by the court to which it was brought, before the publication of this article; the other was still pending, and was not disposed of till some time after the publication — quite a period after the publication, when it was also disposed of in Mr. Hubbard's favor; but the matter was being discussed in the public press at the time these articles appeared. There will be no evidence offered on those matters, but that will cover the substance of it, and those facts I have just stated you are at liberty to use in connection with any discussion of the case."

gallon for the vanilla. Therefore the defense afforded by R. L. c. 173, § 91, could not by any possibility have been made out on the evidence as it stood. Hence actual malice on the part of the defendant was of no consequence. *Burt* v. *Advertiser Newspaper Co.* 154 Mass. 238, 245. But, assuming that this ruling was applicable to the issues raised, no error is disclosed. There was some slight evidence tending to show actual malice by the defendant. Malice is used in this connection in the popular sense. *Connor* v. *Standard Publishing Co.* 183 Mass. 474, 480. *Fay* v. *Harrington,* 176 Mass. 270. It is not to be presumed as matter of law from the publication of the libel. *Brown* v. *Massachusetts Title Ins. Co.* 151 Mass. 127. But it does not follow that the language of the libel itself may not be found as a fact to breathe malevolence. The defendant deliberately inserted in the article the assertion of a fact concerning the plaintiff, as to the truth of which he had no knowledge, but whose truth was vital to much of the rest of the article. The agent of the board, of which the defendant was a member, sent its agent to the store of the plaintiff, which was in the centre of the business section of a large town and near the post office, between six and seven o'clock on a Wednesday evening, and caused him to carry the ten gallon keg containing vanilla under his arm across the street to the room of the board of health. This may have been found suspiciously conspicuous, both as to time and manner. After the defendant had determined to write an article for publication, he was solicited by a newspaper reporter for it. Complaints in court had been made by the board of health against the plaintiff touching the conduct of his bakery, one of which was decided before, another after, the publication of the article, both in favor of the plaintiff. Whatever may be said as to the weight of each of those circumstances standing alone, and probably the last alone would not be sufficient (*Watson* v. *Moore,* 2 Cush. 133; *Kidder* v. *Parkhurst,* 3 Allen, 393; see *Commercial Wharf Corp.* v. *Boston,* 194 Mass. 460), yet collectively they support a finding of a state of mind equivalent to actual malice.

4. The defendant asked for an instruction that "the statement in the alleged article, 'the recent finding of wood alcohol in the so-called vanilla used in one of our local bakeries,' . . . refers

to the quality of the vanilla, and, since it is conceded that the statement is true, the plaintiff cannot recover for any damages caused thereby." The presiding judge gave this instruction in substance, but added, " That statement you may take in connection with other statements in the entire article, in order to see whether or not you can find that there was something there stated which was untrue or unfair." This was sufficiently favorable to the defendant. A single truth may be so interwoven with falsehood as to produce the effect of a fabrication.

5. One Raineault, an employee of the plaintiff, was permitted, against the exception of the defendant, to testify as to the reasons given by customers for declining to use the plaintiff's goods. These were declarations accompanying the act of refusal to trade with the plaintiff and explaining its nature. They were competent within the rule laid down in *Elmer* v. *Fessenden*, 151 Mass. 359, 361, *Weston* v. *Barnicoat*, 175 Mass. 454, and *Peirson* v. *Boston Elevated Railway*, 191 Mass. 223. The act, namely the refusal to buy goods, was an equivocal one; it might arise because no bakers' goods were needed at the time, or because a rival had secured the trade, or because of fear that the plaintiff's goods were poisonous, or from other considerations. A contemporaneous declaration giving the reason for the act was, therefore, competent as disclosing its real character. It was not necessary for the plaintiff to show, as a part of his case, the names of the customers. This was a proper subject for cross-examination, and it does not appear that the defendant was deprived of his rights in this respect. One claim of the plaintiff respecting damages was a loss of patronage. It was competent for the driver of his baker's wagon to state that after the publication of the articles the trade fell off, and that his customers, when refusing to trade, gave the publication of the article in question as the reason.

*Exceptions overruled.*