**James M. CURLEY v. CURTIS PUB. CO.**

District Court D. Massachusetts.

Dec. 18, 1942.

Wendell P. Murray, of Boston, Mass., William A. Needham, of Providence, R. I., and Joseph A. Scolponeti, of Boston, Mass., for plaintiff.

John L. Hall and Charles P. Curtis, Jr., both of Boston, Mass., and Robert S. Sylvester, of Cambridge, Mass. (Choate, Hall & Stewart, of Boston, Mass., of counsel), for defendant.

WYZANSKI, District Judge.

Charge to the Jury.[1]

Mr. Foreman and gentlemen of the jury, my charge will be divided into three parts. I shall make some general remarks, and then I shall give you some instructions of law, and finally I will briefly comment on some of the evidence.

What I say about the law is binding on you. I may make an error with respect to the law. If so, that will be corrected by an appellate court. But you are bound to take the law as I give it to you.

On the evidence whatever I say you may disregard, except where I make it cleai otherwise, because on questions of evidence, where there is any room for disagreement, you are the final triers of the facts. And what I say is not controlling on you where reasonable men may differ as to the facts.

This is a very important case. It is important not because of the parties, although they are well-known. Nor is it important because of the number of people who may have shown interest in the case, nor because of the large amount of space which may have been devoted to reports of this case. Nor is it important merely because the case has been so ably and persuasively presented by very skillful counsel.

The importance of this case lies in the issues which are here at stake. In the plaintiff's view we are here dealing with the dignity and the reputation of one of our fellow men. In his view we have here at stake the right of a citizen to assume the responsibility of public office without being smirched by false statements of fact, as he regards them.

In the defendant's view, we have those issues which deal primarily with freedom of discussion and of comment upon people who are engaged in public capacities. And in his view we have here at stake the right of the public to expect from those who hold public power that they will use public power for the general welfare and not to serve any special interest.

Both parties would agree that all those four matters enter into your consideration. And I am sure they would agree that among the values which we cherish most are the dignity of man, the right to assume public responsibility, the right to have freedom of discussion, and the right to have service for the public dictated only by considerations of general welfare.

Those are the ends for which democracy is created. They are the core of our faith.

I must warn you that you are to consider in this case only the evidence that you have heard in this courtroom, only the arguments that have been addressed to you by counsel, and only what I say to you in charging you. I am well aware that in the public press there have been accounts of this case, and I know that none of you will take into the jury room the physical accounts which appeared in the newspapers; and I hope that none of you will take into the jury room what you recollect from newspaper accounts as distinguished from what you recollect from having heard here in this courtroom.

Any newspaper account is necessarily an abbreviated story of what happened here.

The reporters from the newspapers who are sitting in the room have done an admirable job but they do not sit in the place where you sit. They may not hear every word spoken by a witness or by a lawyer or by the Judge for, as you have observed, sometimes our backs are turned toward them. I do not for a moment intend to go through every error which may or may not have occurred in the press, but as an example, I am going to call your attention specifically to one thing which, if I did not correct it, I am afraid might be prejudicial.[2] You will recall that there was an exchange of pleasantries between the plaintiff and defense counsel, when the

---

[1] No literary or legal alterations have been made. Footnotes have been added in the margin to show some of the authorities relied upon for the statements in the charge.

[2] During the argument of counsel on

plaintiff was being cross-examined. And what I now say has nothing to do with the credibility of the plaintiff or any other witness—the issue of credibility is for you, and I do not want, directly or indirectly, to convey to you any indication on my part as to the credibility or lack of it of anyone. During one of the colloquies, when pleasantries were being exchanged, and there was some repartee, I pointed out to the witness that the cards would be stacked against him unless his answers were clear and concise.

I want to read exactly what I said, from page 133 of the transcript:

"All the cards are stacked against you unless you confine yourself to answers which are clear and concise."

What I then meant and what I did not say very well was this: that in any contest of wits between any examining lawyer and any witness, the witness is apt to be at a disadvantage, because the examining lawyer has had a long time to formulate a question and the witness has a very short time to answer it. In any contest of truth, the advantage may run the other way, for the examining lawyer only knows things second hand, and often the witness knows them first hand and is the only person who knows them first hand.

I refer to this in order to eliminate, I hope, what might otherwise have been regarded as a comment by me upon the credibility of any witness.

I need hardly tell you that when you go into the jury room, you are not going to cast a political vote, in the narrow, parti-

san, political sense. It makes no difference whatsoever what your partisan views of the parties in this case are. Nor does it matter what your literary preferences are, whether you do or do not read the publications of the defendant. You are here for another purpose than to exercise a partisan political preference or a literary preference.

To you are entrusted the scales of justice in a very important case, and you are to weigh the matter solely with an eye to justice.

This is a suit for libel. I am going into libel and the law of libel in some detail, but I want to state very briefly first the general principle which I shall elaborate in detail as I go along.

A person or an organization or a company that publishes a written defamatory statement of another which causes that other damage is liable, that is, is responsible and accountable for the damage, unless the publisher can show that the statement was false [true] or was privileged and even if the publisher shows that it was false [true] or privileged, that is not a complete defense, if the plaintiff shows that the publication was actuated by malice.

I am going into these terms at greater length later, but I want you first to have this bird's eye view.

The plaintiff's complaint says, in outline, that on October 4th, 1941, the defendant published[3] an article in the Saturday Evening Post which was defamatory of the plaintiff, which was malicious, and which

---

the day preceding the charge, the following colloquy took place: Mr. Hall (addressing the jury) " * * * Possibly, as his Honor remarked to you, this plaintiff comes here not as a Sir Galahad." The Court: "I am going to interrupt you again Mr. Hall. I was unfortunately quoted on that, I think, incorrectly, by the press. I have taken the time to look up exactly what I have said on that and I am sure what I intended to say is exactly what the record shows and I am going to read exactly what I said on that. It appears at pages 81 and 82 of the transcript of testimony. What I said was that 'I do not say that the witness should come here as Sir Galahad but he has come here claiming that he is aggrieved by the charge that he debased the public service and under those circumstances he has invited a very broad inquiry.' I did not then mean and I do not now mean that Mr. Curley either is

or is not a Sir Galahad. What I mean is that there is no duty on him to come here as a Sir Galahad in order to maintain a libel suit."

Mr. Hall: "I want to accept what your Honor says. There is no duty on his part to come here as a Sir Galahad to maintain a libel suit." Tr. pp. 631, 632.

[3] The publication admittedly occurred in 48 states and Canada. The Court, prior to the charge, stated that it would apply only the law of Massachusetts. Under the ruling in Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 61 S. Ct. 1020, 85 L.Ed. 1477, this Court must apply the Massachusetts state rule of conflict of laws. It does not appear that in a case like the present, Massachusetts courts would apply in any degree, the substantive law of states other than Massachusetts. Cf. National Fruit Product Co. v. Dwinell-Wright Co., D.C., 47 F.

caused damage to the plaintiff, particularly in connection with his reputation and in connection with physical pain and mental suffering.

The defendant answers that by saying "We admit we published The Saturday Evening Post. We deny that the article was defamatory. We deny it was malicious. We say that the article was true. We say that it was privileged, and we say that it did no damage to the plaintiff."

With those contentions the plaintiff takes issue. He says that it is a false article, that it is an unprivileged article, and, as is asserted in the complaint, that it is defamatory, malicious and caused damage to the plaintiff.

You will recall that a moment ago I said to you that a written publication which defamed the plaintiff and caused him damage, gave him a right to recover, unless the defendant shows truth or privilege, and even truth or privilege is not an absolute defense, if the plaintiff can show malice.

I am sure it is obvious to you that there are five central sorts of problems in this case:

When is an article defamatory?

When is there actual malice?

What, within the meaning of the law of libel, is truth?

What is the privilege which is asserted to exist in this case by the defendant?

What is the rule of damages, if there were damages?

I shall talk about each of those five sets of problems.

When is an article prima facie defamatory?

An article is prima facie defamatory if it so affects the reputation of the plaintiff in the community that he is lowered in the estimation of his fellowmen or they shun him or refuse to associate with him or refuse to communicate with him and tend not to associate or communicate with him.[4]

The question whether an article is or is not defamatory is for you.[5] You determine what is defamatory by taking into account the way the recipients and readers of the communication would interpret it.[6]

It is not necessary that a majority of the community regard it as defamatory. It is not necessary that the wisest men, the most tolerant, the most throughtful in the community regard it as defamatory. The test is whether any substantial reasonable body of opinion in the community regards it as defamatory.[7]

In considering what is defamatory you may look at the exact words used; you may look at the words which are implied, and the thought which is implied and imputed;[8] you may take the words in their whole context.

Now I am going to give you an illustration of what you might conclude to be an implied defamatory remark in this particular article. I warn you that this is an illustration not binding on you. It is merely an illustration.

You will recall that in connection with the statement about the State Police there is a remark to this general effect: that that department was "spared the humiliation of having its rolls loaded with stumblebums." Now, you will notice it is not expressly stated that other departments were filled with stumblebums. But you might reasonably interpret that language as indicating an implication or imputation that other departments were filled with stumblebums. It is not stated directly, but you could say it is fairly implied. You are not required to say that, but it is possible.

Now, on the question of determining whether or not an article in defamatory, the burden of proof rests upon the plaintiff.[9] If you have the slightest—I am going to change that—if you have doubt on

---

Supp. 499. An attempt to apply a checkerboard set of legal rules would be impractical either in determining the admissibility of evidence or in charging a jury.

But cf. the remark of Mr. Justice Black. in Garrett v. Moore-McCormack Co., Inc., et al., Dec. 14, 1942, 63 S.Ct. 246, 251, 87 L.Ed. —: "The constant objective of legislation and jurisprudence is to assure litigants full protection for all substantive rights intended to be afforded them by the jurisdiction in which the right itself originates."

[4] Restatement, Torts § 559.

[5] Restatement, Torts § 614(2). Ingalls v. Hastings & Sons Pub. Co., 304 Mass. 31, 22 N.E.2d 657.

[6] Restatement, Torts § 563.

[7] Ingalls v. Hastings & Sons Pub. Co., 304 Mass. 31, 22 N.E.2d 657.

[8] Merrill v. Post Pub. Co., 197 Mass. 185, 193, 83 N.E. 419.

[9] Restatement, Torts, § 613(1) (a).

that issue you are bound to determine that issue in favor of the defendant. The burden of proof, that is, the burden of persuading in connection with the issue whether an article is defamatory, rests upon the plaintiff.

You may be misled about the word "defamatory" as I have used it, and so I am going to add a caution. Even if you conclude that there is a defamatory part in the article, or even if you conclude that the article as a whole is defamatory, that does not settle the case, because in addition to the article being defamatory you have to consider certain other issues which I am going to come to. And I ought to add this, in case I have not made it clear: That you may find the article as a whole defamatory, that is to say, you may find that passage in the article which refers to Mr. Curley and begins on page 11—I think it begins on page 10 and runs through page 11 and continues partly on page 112—you might find the whole of it defamatory of the plaintiff or you might find certain parts of it defamatory; and you might find that none of it is defamatory. It is up to you to look at all the passages which deal with Mr. Curley; and of course you are entitled to look at those passages in the context of the whole article in the Saturday Evening Post, in which they are included.

Now I pass from the question of what is defamatory to what is malice.[10] Malice as used in the law of libel means just about what it means in everyday speech.[11] It means a wicked and perverse desire to inflict harm on the plaintiff for the sake of inflicting harm.[12] Malice is ill will. It is malevolent.[13] Malice may be shown by direct evidence.[13a] It may be shown indirectly by looking within the four corners of the publication. That is to say, malice may be proved by a witness in connection with a publisher, or a witness in connection with a plaintiff, or you may find it just from looking at the article itself.

Of course on the other hand you are not bound to find actual malice, and nothing I say indicates either that I believe there is malice or there is lack of malice.

I must add this: That under the Massachusetts law[14] a defendant may rebut actual malice by proving to you that he acted or it acted reasonably and in good faith in looking up the basis upon which it proceeded. And that is offered in rebuttal.

On the issue of malice the plaintiff has the burden,[15] but in rebutting malice the rebuttal burden rests upon the defendant.[16] And I shall not want you to suppose that the rebuttal is necessarily conclusive. You may or you may not regard reasonable diligence and reasonable investigation as rebutting malice. Even if you found that there was a complete and full investigation, and you still thought there was malevolence and ill will, you could find actual malice.

Now I will pass from malice to the defense of truth. Up to now, I have been talking about issues on which for the most part the plaintiff has the burden. Truth stands in a different category. On the issue of truth the defendant, the Saturday Evening Post, has the burden.[17]

---

[10] Analytically, the discussion of malice should follow the discussion of truth. The court inverted the order so that the jury would not confuse malice with abuse of privilege, and so that the jury could be told that on issues 1 and 2 the plaintiff had the burden, and on issues 3 and 4 the defendant had the burden.

[11] Hubbard v. Allyn, 200 Mass. 166, 173, 86 N.E. 356.

[12] Faxon v. Jones, 176 Mass. 206, 208, 57 N.E. 359.

[13] American Well Works Co. v. Layne, & Bowler Co., 241 U.S. 257, 260, 36 S. Ct. 585, 60 L.Ed. 987.

[13a] Hubbard v. Allyn, 200 Mass. 166, 173, 86 N.E. 356, 359, "The language of the libel itself may * * * be found * * * to breathe malevolence."

[14] Mass.G.L.(Ter.Ed.) c. 231, § 94 "Evidence in mitigation of damages. In an action for libel, the defendant may allege and prove in mitigation of damages that the plaintiff has already recovered damages for, or has received or has agreed to receive compensation in respect of, substantially the same libel as that for which such action was brought. In an action for libel or slander, he may introduce in evidence, in mitigation of damages and in rebuttal of evidence of actual malice, acts of the plaintiff which create a reasonable suspicion that the matters charged against him by the defendant are true."

[15] Mass.G.L.(Ter.Ed.) c. 231, § 92. "Truth of libel admissible. The defendant in an action for writing or for publishing a libel may introduce in evidence the truth of the matter contained in the publication charged as libellous; and the truth shall be a justification unless actual malice is proved."

[16] Mass.G.L.(Ter.Ed.) c. 231, § 94.

[17] Mass.G.L.(Ter.Ed.) c. 231 § 92. Restatement, Torts § 613(2) (a).

Truth in the law of libel means substantial truth.[18] It is not necessary that every least detail be accurate, but it is necessary that the truth be substantially portrayed in every part of the article which you find to be defamatory in order for the truth to be a defense.

I will now give you an example of what seems to me to be the sort of thing as to which you could find substantial truth, but as to which you retain your own independent views and are not bound by me.

You will recall that there is a sentence in the alleged libel the general effect of which is this: "Emulating Huey Long, he turned state bureaus into dummy bodies by packing them with docile appointees." You notice that the language used is "state bureaus".

Now, some of the tribunals which have been referred to in the testimony are not technically state bureaus. For instance, the Governor's Council is not a bureau. But if you found—and I am not suggesting you should find—that there was a packing of the Governor's Council with docile appointees, you could find the statement to be true, even though the statement uses the word "bureau", and the truth, as I imagine in this hypothetical case, would relate only to the Council. I don't want to give you the impression that only one bureau was discussed in the testimony in this case. There were a great many discussed: the Finance Commission, and various departments of the government. I have merely selected one for purposes of illustration.

I again repeat that I make no comment upon whether the statement is true. I merely have been illustrating what you could find to be substantial truth.

Truth is not an absolute defense. Truth is a defense only if there is no actual malice.[19] But truth is a very important defense. It is set up by the statute, and you will consider it carefully.

When you find, if you do find, that any part of the article is defamatory, look at that part of the article that you find defamatory, if you find it defamatory, and lay it alongside of the evidence. Decide for yourselves whether it is substantially true. Of course if you find that the whole of the passage in the article which deals with Mr. Curley is defamatory, then you will lay it against the whole evidence.

You can see from what I have said that your initial inquiry will be to determine what part or passages in the article are defamatory if any part or passages are. And if you find that no part of the article is defamatory, you will never have to consider the questions of malice or truth or privilege or damages.

Now, I have discussed three of the principal points in this case. I have discussed what is defamatory. I have discussed what is actual malice. And I have discussed what is truth. I come now to the fourth inquiry. What is privilege as here asserted?

Under the law of libel there is a privilege, the nature of which I shall explain, to comment upon candidates for public office and other public figures who hold themselves out as such.[20] That privilege is not confined to the press. There is in the law of libel no such thing as liberty of the press as such.[21] There is, however, liberty of discussion and comment. That liberty belongs to all of us, to every citizen that walks the street. And that liberty is available to the press. Newspapers and periodicals have the same right, neither more nor less, than the average citizen, to comment upon candidates for public office.

The privilege is a privilege to express an opinion. It is a privilege to comment. It is a privilege to criticize. But it is not a privilege to state facts falsely.[22] So far as the facts are concerned, the only defense, if they are defamatory, is the truth. So far as opinion, comment, and criticism go, the statements, if they are statements of opinion, comment, and criticism, and are based upon what you find to be true facts, need not themselves be true. That is to say, you do not have to believe that a comment is accurate, if you think there is in truth a

[18] Maloof v. Post Publishing Co., 306 Mass. 279, 28 N.E.2d 458; Restatement, Torts, § 582 Comment (e).

[19] Mass.G.L.(Ter.Ed.) c. 231 § 92.

[20] Restatement, Torts § 607; Conroy v. Fall River Herald News Pub. Co., 306 Mass. 488, 490, 28 N.E.2d 729, 132 A. L.R. 927; Maloof v. Post Pub. Co., 306 Mass. 279, 28 N.E.2d 458; Lynch v. Lyons, 303 Mass. 116, 119, 20 N.E.2d 953;

Hubbard v. Allyn, 200 Mass. 166, 86 N. E. 356; Burt v. Advertiser Newspaper Co., 154 Mass. 238, 28 N.E. 1, 13 L.R.A. 97.

[21] Haynes v. Clinton Printing Co., 169 Mass. 512, 515, 48 N.E. 275.

[22] Hubbard v. Allyn, 200 Mass. 166, 170, 86 N.E. 356; Burt v. Advertiser Newspaper Co., 154 Mass. 238, 242, 28 N. E. 1, 13 L.R.A. 97.

substantial underlying fact for that comment.[23]

Comment may be severe. It may include ridicule, invective and sarcasm. But it must be comment upon a true fact and not comment upon a falsehood.[24]

I shall take an illustration from the testimony, which I think will enable you perhaps to distinguish between truth as a defense and privilege as a defense.

You will recall that there is in the article a phrase to this general effect, that the plaintiff was "a nimble coat-tail hopper". Undoubtedly, as the plaintiff himself admits, he supported Mr. Smith in 1928, Mr. Owen D. Young for a short time in the interval, and Mr. Roosevelt in 1932 from a period long antedating the convention held in 1932 in Chicago.

Now, there are plainly some facts to show a shift of allegiance. There may be very good reasons for that change of allegiance, and you and I may think it a rather absurd thing to have called that change of allegiance "nimble coat-tail hopping". We may think it is just the sort of thing which goes on all the time in public life, and that you and I change our votes just as readily as the plaintiff did. But there are some underlying facts which justify a comment. And if you merely think that the comment is extreme, and what you would be inclined to say in inaccurate and perhaps false, you might still say that the comment was privileged; that really there is nothing to that, you might say, except an expression of opinion; there is nothing but criticism and comment, and there are some facts which, though they do not go as far in your opinion as to justify that comment, might reasonably be thought by somebody else to go so far as to justify that comment.

On the question of privilege, the defendant, the Saturday Evening Post, has the burden of proof.[25] However, it may be claimed that there is an abuse of the privilege. And on the issue of abuse of the privilege, the plaintiff has the burden of proof.[26]

What would be an abuse of the privilege? If solely for the purpose of inflicting injury upon Mr. Curley, the Saturday Evening Post made a comment upon him, you could find that that was an abuse of the privilege.[27] If you found that that was the *sole* purpose, you would be justified in concluding abuse of privilege.

Now I am going to make a contrast that you may find hard to keep in mind, and which is quite technical, but I think I had better do it. You will remember that when I was talking of malice I said that a wicked, malevolent, sinister purpose to inflict injury upon somebody else could be found to be actual malice. Now, you can find that that motive is present with other motives and find actual malice. In other words, if you think that the Saturday Evening Post published this article for the purpose of inflicting injury deliberately, willfully, and also wanted to make money at it, you could find actual malice. With respect to abuse of privilege, a privilege is regarded as abused if the privilege was used solely for the purpose of inflicting injury.

A privilege would also be regarded as abused, if there were no possible reasonable basis for the comment which otherwise would be protected by the privilege.[28]

I pass now to the issue of damages.

On the question of damages I ought to say this first: You will never have to consider the issue of damages unless you first decide that the article as a whole is defamatory and untrue and unprivileged, unless there is malice, or alternatively, unless you decide that a particular part of the article is defamatory and that that part is either malicious or is false and unprivileged.

If you have decided that a part of the article or the whole of the passage is defamatory, and you have also decided that it is malicious; or if you have decided that it is defamatory and it is also untrue and unprivileged, you will then have to come to the question of damages.

In a libel suit, the appropriate measure of [29] damages is the loss of reputation suffered by the plaintiff, the physical pain which he has suffered, and the mental anguish which he has suffered.[30]

---

[23] Restatement, Torts, § 606, especially comment (c).

[24] Hubbard v. Allyn, supra.

[25] Restatement, Torts § 613(2) (b).

[26] Restatement, Torts § 613(1) (g).

[27] Restatement, Torts, § 606(c).

[28] Restatement, Torts, § 601; Fay v. Harrington, 176 Mass. 270, 274, 57 N.E. 369.

[29] The word "compensatory" was not included at this point, but it should have been, and the error was corrected later, see note 37.

[30] Restatement, Torts § 621. Conroy v.

You will note that I have said the suffering must be by him, not by others.

You cannot, under any circumstances, include punitive damages.[31] You may, however, properly take into account malice, if you find that there is malice, and you may enhance damages on account of malice.[32]

You are entitled to take into account the standing of the plaintiff in the community and group in which he moves.[33] You are entitled to take into account the extent of the publication of which complaint is made.[34] All those are proper elements.

Under the pleadings in this case no special damage of a technical nature is alleged, and so you cannot consider any pecuniary loss which the plaintiff may have suffered,[35] nor can you consider the loss of an election,[36] if the loss of the election was in any way attributable to the publication. You must forget that entirely.

As I have said, you cannot include punitive damages, but you may take into account either in increasing or decreasing damages, the amount of malice, if any.

Let me once again put in a single sentence the law of libel as here applicable: The plaintiff, if he has been defamed by this publisher, and if that defamation has caused him damage, can recover, unless the statements were true, or unless they were privileged, and even if they were true or were privileged, he can recover, if there was actual malice.

I am going to say briefly something about the evidence in the case. A Federal Judge is entitled to comment upon the evidence but I shall use my power very sparingly because this is the type of case in which the parties have the right, and the community has the right to the judgment of twelve men. It is the sort of case in which the community properly may feel that the Jury, rather than the Judge, is the appropriate tribunal to express any views with respect to truth and any views with respect to credibility.

I will go through the same five points again: Is there any evidence whatsoever that the article, in whole or in part, was defamatory?

Surely, there is enough evidence to permit you to come to your own conclusions on that issue.

I do not intend now to read to you the whole of the article nor any sizable parts of it. Indeed, I do not propose to read any of it to you for I know that you will do that when you retire to the juryroom. But I think it would be fair to both sides if I reminded you briefly of those passages upon which the principal emphasis was put in the testimony. What I say does not indicate that there are not other passages that you should consider. What I say does not indicate that you are bound to consider separate passages instead of the whole document. I have already told you that you may consider the whole, you may consider the words in their context, and you may consider what is implied, no less than what is expressed.

I think it is fair to say that these passages again and again were the subject of questioning.

There was a passage, the general effect of which was that the plaintiff was a freebooter who plagued Bay State politics.

There was a passage to the effect that he was a nimble coattail hopper.

There was a passage to the effect that his excesses broke the morale of the public service.

There was a passage to the effect that emulating Huey Long, he turned state bureaus into dummy bodies and packed them with docile employees.

There was a statement much examined on with respect to the Cardinal, the general

Fall River Herald News Pub. Co., 306 Mass. 488, 28 N.E.2d 729, 132 A.L.R. 927.

[31] Burt v. Advertiser Newspaper Co., 154 Mass. 238, 245, 28 N.E. 1, 13 L.R.A. 97.

[32] This is not precisely accurate. Malice may increase damages attributable to mental anguish. See Burt v. Advertiser Newspaper Co., 154 Mass. 238, 245, 28 N.E. 1, 13 L.R.A. 97; Faxon v. Jones, 176 Mass. 206, 57 N.E. 359; Probably it should not be considered in estimating damages due to loss of reputation. Burt v. Advertiser Newspaper Co., supra. But see Conroy v. Fall River Herald News Pub. Co., 306 Mass. 488, 492, 28 N.E.2d 729, 132 A.L.R. 927.

[33] Restatement, Torts § 621, comment (c).

[34] Bigelow v. Sprague, 140 Mass. 425, 427, 5 N.E. 144.

[35] Lynch v. Lyons, 303 Mass. 116, 119, 20 N.E.2d 953.

[36] Ibid.

nature of which was that he [the plaintiff] was a Catholic of whom His Eminence would have no part if he could avoid it.

There was discussion of the state lottery.

I do not say that that is all that you have to consider. I merely say that as I ran over the testimony in my own mind those occurred to me as the sort of things that I would weigh in deciding the issue of defamation. I would also weigh a great many other things which I have not time to state.

With respect to malice, we did not have on the stand any witness who came from the publisher, and Mr. Murray has drawn that to your attention. You may consider that. You may also consider that there is no evidence here of any personal ill-will between the publishers of the Saturday Evening Post and the plaintiff. You may also look at the document as a whole.

There is one point which I wish to make clear: If you find malice with respect to any other person than Mr. Curley, that does not show that there was any malice toward Mr. Curley as a matter of law. But you may take into account, if you find that the article as a whole is spiteful, and that the spite includes all the persons covered, or includes Mr. Curley as one of the persons covered, you may take that into account.

With respect to truth, you have a very sacred duty. Undoubtedly, the issue of truth is the one about which both parties most care, and I intend to say nothing about it except to urge you to consider that issue carefully.

With respect to privilege, you have the ability to distinguish between comment and statements of fact. You know, from what I have already said, that there is no privilege to state falsely matters of fact. You know that there may be comment upon matters of fact, and the comment may be false or true and it will still be privileged, if in your judgment it is the expression of opinion upon what you find to be the fact.

As to damages—damages are an element about which a Judge has no better knowledge than a jury. You are practical men. You know what the consequences practically are of articles which are defamatory and not true or privileged, and articles which are defamatory and are malicious.

I do not suggest that this article is defamatory or malicious or untrue or unprivileged. I take no position on that mat-

ter. That is for you. But if you should decide that you have to consider the question of damages, then, gentlemen, your experience is sufficient to decide the matter, and twelve of you are much better estimators than I alone would be.

I am going to do a very unusual thing in a libel case. I am going to take advantage of what I am authorized to do under Rule 49 of the Rules of Civil Procedure, 28 U.S. C.A. following section 723c, and I am going to put this case to you, not for a general verdict, but for a special verdict. I am going to ask you five separate questions.

At this time I will distribute to you, and there are enough copies for each of you and for counsel, copies of those questions.

I am going to put these five questions to you and I want you to answer each of them, except as I have otherwise indicated. It may be that you will have to answer only the first question. It may be that you will have to answer four questions. It may be that you will have to answer five questions.

The first question I am putting to you is: Is the article in whole or in part defamatory of the plaintiff?

Of course, when I say "in whole" I mean the passages on pages 10, 11, and 112, which refer to the plaintiff.

You can answer that question yes or no.

Of course, in your discussion in the jury-room, you will undoubtedly look at separate passages and you will look at the article as a whole.

All of you must be in agreement before you can find the answer to this question "Yes", and you must be in agreement not only that there are parts that are defamatory or that the whole is defamatory, but you must be unanimous on the particular parts that you think are defamatory or that the article as a whole is defamatory, if you think that the article as a whole is defamatory.

After you have come to your conclusion on the first question, if you have, by any chance, answered that "No", that is the end of your job. You don't have to go on.

If you have answered that "Yes", then you will presumably have concluded either that the whole of the article is defamatory or that certain specific parts are defamatory, and all twelve of you will have agreed.

Then you come to Question No. 2: If any parts of the article—and when I say "any parts" of course I include the whole

—if any parts of the article defamed the plaintiff, did the defendant publish those parts with actual malice toward the plaintiff?

And there you can answer "Yes" or "No".

3. If any parts of the article defame the plaintiff, are those parts true? And you will answer that "yes" or "no", or of course you may say that it is unnecessary to answer it because you have not found any parts of the article defamatory.

Then No. 4. If any parts of the article defame the plaintiff, are those parts within the privilege to criticize the public conduct of a candidate for public office?

You will bear in mind that I use "criticize" there as the equivalent of comment and expression of opinion. It does not mean there is any right to state falsehoods of fact about a man in public office. You may answer that question either "yes" or "no", or "unnecessary to answer in view of answer to question 1."

Now, supposing that you have found that the article is malicious,—if you have found that the article is both defamatory and malicious, you are required to answer the question on damages. If on the other hand you have found that the article is not malicious, and have found that the article is true, or if you have found that the article is not malicious and is privileged, you will not have to answer to the question of damages.

Now I have read this fifth question to myself sufficiently often to think that it covers every case.

I will now read it to you: "If, but only if, you either answer question 2"—that is the question of malice—" 'yes' and/or answer both questions 3 and 4 'no', then answer this question. Otherwise, leave it blank. What damages, if any, did the plaintiff suffer from such parts of the article, if any, as were either malicious, or both untrue and unprivileged?"

Of course if you find that there is no malice, that some of the defamatory statements are true, and others are privileged, and still others are neither true or privileged, you will have to go on and answer the question of damages. But I think that is covered if you read this language very carefully.

I have for the moment said all that I intend to, until such time as counsel have talked to me. If their comments are going to be long, I am going to excuse the jury. If they are going to be short, I won't.

Will you both step up to the bench?

The Court. Mr. Foreman and gentlemen of the jury, in accordance with their rights counsel for the plaintiff and counsel for the defendant have pointed out to me certain matters covered in my charge as to which I spoke inadvertently or erroneously.

Apparently in a few cases I mixed up the words "true" and "false", but I daresay that you have a correct interpretation of what I intended. What I intended to say was that truth is a defense, and the burden of proof with respect to truth is upon the defendant; that if a statement is true, the defendant is entitled to prevail unless the plaintiff shows that there is actual malice.

I do not want to give you the impression that in order to win this case the plaintiff has to show actual malice. If the plaintiff shows that an article is defamatory, and the defendant does not show that it is true or privileged, the plaintiff can recover for any damages which he has sustained.

In talking to you about damages I said that any loss of reputation in the community could be taken into account in estimating the damages. If you find that the defendant made defamatory statements which were malicious, or if you should find that the defendant made defamatory statements which were false and unprivileged, you could allow a recovery of nominal damages, even though you did not find that there had been any actual lowering of the reputation of the plaintiff in the community.[37] Under those circumstances you could only return nominal damages. I do not suggest that that is what you ought to do, but that is one of the possibilities.

Now, I referred to Mr. Murray's argument that nobody from the Saturday Evening Post came here. I ought in justice to the defendant to say this: That it was agreed between Mr. Murray and Mr. Hall that Mr. Alexander's affidavit would be treated as though it had been the subject of testimony given here. Mr. Alexander was not an officer of the Saturday Evening Post, but he was the writer in whose name the article appeared in the Saturday Evening Post.

There were some discussions in the arguments of counsel which I perhaps ought very lightly to touch on.

---

[37] See note 29.

You will remember there was some more reference to the General Equipment case. I would like to say again that the merits of the General Equipment case are not before you. In considering the motives, if any, that Mr. Curley had for changing the Finance Commission you can take into account that the General Equipment case was pending before the Finance Commission. The mere fact that I have stated this again does not indicate that it was my view that that was or was not the motive. I am merely making that statement so that what I have hitherto said may again be fresh in your minds.

Also, quite inadvertently I am sure, Mr. Murray referred to a visit which Mr. Curley made to the Cardinal after the publication of this article. There is no admissible testimony to support that statement, and you are to disregard any argument based upon an allegation that such was the fact.

I quite erroneously neglected to state, but you may recall, that there was a stipulation in open court on the part of the plaintiff and the defendant that any damages which the plaintiff may have suffered after January 1, 1942, are to be excluded. Both parties agreed to that. So that if there were any damages suffered by the plaintiff, you can allow recovery for them only in so far as they were sustained before the first of this year.

I should add one other point. The term "malice" has been defined by the Massachusetts courts a number of times, and I am going to take two quotations, just so there will be no doubt about how I regard the term "actual malice".

Judge Rugg in Hubbard v. Allyn, 200 Mass. 166, at page 173, 86 N.E. 356, at page 359, said: "Malice is used in this connection in the popular sense." Judge Knowlton in Faxon v. Jones, 176 Mass. 206, at page 208, 57 N.E. 359, said: "Malice [includes] a wicked purpose to cause him", meaning the plaintiff, "suffering."

The mere desire to eliminate somebody from an election would not of itself be malice.

Malice means something personally malevolent.

The Court. Will you collect all except the first copy of the verdict?

All the others are to be collected because I do not want them used in the juryroom. You may give the foreman one copy in addition to the original along with the exhibits in the case.

I want you to know, gentlemen, that if there is real obscurity on your part in connection with anything I have said in my charge, you have the right to return to this jury box to have it cleared up. I would not want you to use that privilege unless it was really necessary.

Also, if there is a serious dispute among you as to testimony, you have a right to have that clarified. I need hardly tell you that if there should be such a dispute, it might take quite some time to locate the passages that you had in mind, and yet I do not want to say that delay is of itself a reason for not asking, but do take into account the fact that it is desirable that you should proceed to render your verdict without too many interruptions.

The community looks to you. You have taken the oath to perform your duty impartially and justly. Perform it so that the verdict may stand in your eyes and in the eyes of God as a true verdict.

You are excused.

[At 11:15 a.m. the jury retired to deliberate.]

[The Court and jury returned to the courtroom at 8:45 p.m.]

The Court. Mr. Foreman and gentlemen of the jury, I have this written question from you:

"Question 2. If any parts of the article defame the plaintiff, did the defendant publish those parts with actual malice toward the plaintiff?

"What we would like is a concise legal definition of the word 'malice'."

This time I am going to take a rather unusual step of reading the exact language from decisions, since apparently you want a further clarification of what I myself regard as malice. And I shall begin by reading the two statutory provisions which are here applicable, Massachusetts General Laws, (Ter.Ed.) Chapter 231, Section 92: "The defendant in an action for writing or for publishing a libel may introduce in evidence the truth of the matter contained in the publication charged as libelous; and the truth shall be a justification unless actual malice is proved."

And Section 94 states in part: "In an action for libel, the defendant * * * may introduce in evidence, in mitigation of damages and in rebuttal of evidence of

actual malice, acts of the plaintiff which create a reasonable suspicion that the matters charged against him by the defendant are true."

You see the words "actual malice" occur in both sections. You will see that the statute itself does not define the term "actual malice".

I will now read to you from Faxon v. Jones, a decision of the Massachusetts Supreme Judicial Court, certain language which I think may be helpful in connection with actual malice.

It is indicated here that malice includes "a wicked purpose to cause him"—meaning the plaintiff—"suffering." It is also indicated that the term "malice" includes "seeking pleasure and satisfaction in deliberately doing the plaintiff a grievous wrong."

Elsewhere the term "malice" has been defined as "malevolence". I defined it this morning as "a deliberate intent to inflict pain".

I want to make it clear, as I had hoped to do this morning, that the desire to defeat a candidate or the desire to eliminate a man from a political contest is not by itself malice. Malice means personal ill will, inflicting suffering with no justifiable reason for believing that what you are saying is true, or for the mere purpose of causing pain.

I said this morning, and I repeat, that it is up to you to decide whether there is malice in this case. The plaintiff relies partly upon what appears within the four corners of the article. He says that there you will find indications of malice.

The defendant says you will not find indications of malice in the four corners. The defendant says that there were no personal relations between the plaintiff and the defendant. And the defendant says that Alexander's affidavit, which is before you, shows that there was no ill will.

I express no opinion upon the evidence.

[At 10:30 p.m. the Court and jury returned to the courtroom.]

The Court. Gentlemen, I have received this note from the foreman: "The jury finds itself in a disagreement which appears to be hopeless."

Mr. Foreman and gentlemen of the jury, sometimes in this court it is the practice to read to the jury when it has been out for a long time and has not agreed a case known as Commonwealth v. Tuey, 8 Cush. 1. I am not going to do that. I am not going to bring any sort of pressure for you to agree beyond what you as conscientious men think you can do.

I am going to say only this much. I will take whatever your view is after fifteen minutes' more consideration. I want you to go back, and think whether or not you ought to continue your deliberations tonight; second, whether you at government expense would care to stay at the Parker House over night and then continue tomorrow; or whether you want to disband.

I am not going to bring any pressure on you. I am, however, going to say to you that this is an important case. I do not want you to sacrifice beyond what is just and reasonable any differences of opinion that exist among you. At the same time I want you to remember that this case has cost the parties and the Government of the United States a great deal of time and money to try. You are as capable as any jury that will ever be called upon to consider the case.

With that in mind, will you please go back. At the end of fifteen minutes will you let me know whether you believe further discussion tonight will be of any use; if not, whether discussion tomorrow will be of any use. If then you think that further discussion will be useless, I will then dismiss you. It is your duty to decide it.

I want to bring no more pressure than I have so far indicated.

You may retire and let me know in fifteen minutes.

[The jury again retired to deliberate.]

[The following then took place at the bench:]

The Court. I don't know whether your views are at all different, but this seems to me the sort of case in which it would be highly undesirable for anybody to think that a verdict was coerced by the Court, and I think that they are the best judges as to whether they are being coerced.

[The court recessed at 10:35 p.m.]

[At 10:50 p.m. the Court and jury returned to the courtroom.]

The Court. I have a note from the foreman, Mr. Morrison, to the following effect: "We, the jury, regret very much that after careful and conscientious deliberations we have been obliged to report a disagreement. However, we feel that any further deliberations will be futile."

Mr. Foreman and gentlemen, as I said, I have no desire to coerce you in a case

of this public importance, and indeed in any sort of case, and I would think that in this particular type of matter you are the best judges as to whether further deliberation would serve any useful purpose.

I want to thank you for your conscientious services, for your patient attention to the case, and for the care with which you have deliberated for the last eleven hours.